IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TEAM CAM, LLC. | * | |
| | * | |
| v. | | Civil No. 1:24-01545-TDC |
| | * | |
| RELIABLE CONTRACTING | * | |
| COMPANY, INC., et al. | | |
| | * | |
| Defendants. | | |

\*     \*     \*

## MEMORANDUM OPINION

Now pending is Plaintiff Team Cam's Motion to Compel Defendant Midlantic's responses to Team Cam's request for production of documents. ECF 123. I have considered the relevant matters in this case and the parties' briefs (ECFs 123-1, 123-2, 123-3).[1] I find that no hearing is necessary. *See* D. M. Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the Court GRANTS in part the Motion. A separate order shall follow.

## I.    BACKGROUND

On May 28, 2024, Team Cam, LLC ("Team Cam" or "Plaintiff") filed a complaint against several companies, including Midlantic Marking, Inc. ("Midlantic" or "Defendant"), alleging that, in violation of federal and Maryland antitrust laws, the companies conspired to (1) "eliminate Team Cam as competitor" in the Eastern Maryland Pavement Market; and (2) fix the asphalt prices by "impos[ing] extractive price terms on

---

[1] Judge Theodore Chuang, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, referred this case to me for "[a]ll discovery and related scheduling matters." ECF 118.

Team Cam in the form of provisions requiring pass-through of state price adjustments and incentives." Complaint, ECF 1, at ¶¶ 130, 140 ("Compl."); *see also* Team Cam's Motion to Compel, ECF 123-1, at 3 ("MTC"). As part of this alleged conspiracy, Team Cam contends that Midlantic worked with other defendants to inhibit or eliminate Team Cam's bonding capacity, negatively affecting Team Cam's ability to secure government contracts. Compl., at ¶ 86; MTC, at 3. Defendants collectively filed a Motion to Dismiss the claims on September 20, 2024. ECF 59. Regarding Midlantic, the Court granted in part and denied in part the motion, dismissing the claim of conspiracy to fix asphalt prices but allowing litigation to proceed on the claim of conspiracy to eliminate Team Cam from the eastern Maryland paving market. ECF 79, at 29.

In discovery, among other things, Team Cam propounded requests for production ("RFP") on Midlantic. MTC, at 3-4. Relevant here, Team Cam argues that the responses to RFPs 2, 3, and 8 lacked the requested email communications with co-defendants, contained only one internal email, and lacked numerous emails between Midlantic and Team Cam. *Id.* After Team Cam asserted these alleged deficiencies, the parties conferred on September 4, 2025 without resolution. *Id.*, at 4. The following week, Team Cam served its Motion to Compel on Midlantic. *Id.* Contemporaneous with its response to the Motion to Compel, Midlantic produced an additional 280 documents consisting of the missing emails between Midlantic and Team Cam. Reply in Support of Motion to Compel, ECF 123-3, at 1 (Team Cam's Reply"). Because of this late production, Team Cam requests, in addition to an order compelling production, that the Court order Midlantic to "explain its process for collecting and reviewing discovery and supplement its document productions to correct the deficiencies." *Id.*, at 11.

## II.    LEGAL STANDARD

"District courts enjoy substantial discretion in managing discovery, including granting or denying motions to compel." *Pac. Life Ins. Co. v. Wells Fargo Bank, NA*, 702 F. Supp. 3d 370, 376 (D. Md. 2023) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of VA., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).  As a general matter, Federal Rule of Civil Procedure 26(b)(1) establishes the scope of discovery as allowing the parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Discovery is relevant if there is "any possibility that the information sought may be relevant to the claim or defense of any party."  *O'Malley v. Trader Joe's East, Inc.*, No. RDB-19-3273, 2020 WL 6118841, at *3 (D. Md. Oct. 15, 2020) (internal quotation marks and citation omitted).  Because relevance determines whether a matter is discoverable, "[d]iscoverable evidence is broader than admissible evidence[.]"  *Est. of Bryant v. Balt. Police Dep't*, No. ELH-19-384, 2020 WL 6161708, at *3 (D. Md. Oct. 21, 2020) (internal quotation marks and citations omitted).  Where defendants have "lost their motion to dismiss, and discovery has commenced" a plaintiff is "entitled to investigate its claims and Defendants' defenses." *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, No.PJM-22-2369, 2024 WL 4553371, at *3.  In determining whether discovery is proportional, courts consider:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "The requesting party bears the burden of establishing relevance and proportionality, while the party resisting discovery bears the burden of

demonstrating why discovery should not be permitted." *Hall v. Balt. Police Dep't*, No. 24-1137-RDB, 2025 WL 509130, at *6 (D. Md. Feb. 13, 2025); *McNulty v. Casero*, No. SAG-16-2426, 2019 WL 5454900, at *3 (D. Md. Oct. 24, 2019) ("The party resisting discovery generally carries the burden to 'clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules.'") (quoting *United Oil Co. v. Parts Ass'n*, 227 F.R.D. 404, 411 (D. Md. 2005)).

## III.   ANALYSIS

The Court will grant Team Cam some of its requested relief based on what appear to be Midlantic's inappropriate alterations to the requests' scope and/or previous deficient productions. This conclusion focuses on the language of the responses and the parties' arguments; on this second point, Midlantic does not appear to resist the RFPs *as written* on proportional or burdensome grounds. And the Court is not moved by Midlantic's arduous denial of any wrongdoing; discovery is not dictated by the ultimate merits of a case. However, the Court stops short of wading into the treacherous waters of "discovery on discovery" at this point. As discussed below, should additional, specific facts demonstrate specific, material deficiencies warranting deployment of a disfavored mechanism, Team Cam may revisit the issue.

### a.  RFP 2

The Court will order additional production in response to this request because Midlantic's response appears to narrow the scope of the request. In essence, Team Cam seeks communications with other co-defendants that (1) relate to "Team Cam, its bids or projects, asphalt supply to Team Cam, [or] Ryan Blades," or (2) otherwise relate to "any of the allegations contained in the Complaint." MTC, at 22, Exhibit 1. Midlantic responded to the RFP noting its intent to produce responsive communications "related to

road striping, which is Midlantic's business." Midlantic's Response, ECF 123-2, at 7 ("Midlantic's Response"). The Court finds this verbiage inappropriate. It may be that all of Midlantic's documents relate to road striping because that is the only topic of any business record it has. Or it may not. Its alteration of the language provides little comfort that reality is the former, not the latter. Further, Team Cam's concerns appear justified by both Midlantic's narrowing of the language and its initial deficient production that it supplemented after receiving the pending Motion to Compel. To resolve the parties' disagreement about what the RFP requires, the Court will grant the Motion on RFP 2. Midlantic should produce all non-privileged communications with any defendant that falls within the scope of the RFP as read by the Court.

### b. RFP 3

The Court will compel further action for many of the same reasons above. Primarily, Midlantic's response being tethered to "road striping, which is Midlantic's business" fails as incongruous with the scope of the request. Midlantic's Response, at 9. While Midlantic could ultimately prevail in its insistence that as a road striping competitor, it had no part in the alleged conspiracy, that intention does not justify its response. If anything, it raises doubt that may not otherwise exist had Midlantic provided a small set of documents after acknowledging the breadth of the request as written. Midlantic should produce all non-privileged communications with any defendant that falls within the scope of the RFP as written, regardless of whether the documents involve the road striping business. So long as documents "concern the allegations in the Complaint, the Action, or its subject matter," they are responsive. *See* Fed. R. Civ. P. 26(b)(1); Team Cam's Reply, at 8.

### c. RFP 8

Midlantic shall also search for and produce, to the extent they exist, documents related to bond claims filed by Team Cam. Midlantic claims that it responded as such, despite first claiming that the RFP is flawed by including this language. Midlantic's Response, at 9-10. Thus, this issue may be moot. But to the extent that Midlantic comes into possession of any documents that may involve claims *by* Team Cam (including through discovery of any other archives), it must supplement its production in accordance with its discovery obligations.

### d. The request for "discovery on discovery"

The Court exercises great caution before ordering "discovery on discovery." *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 161-62 (N.D. Ill. 2023) ("Discovery on discovery should be the exception, not the norm."). Since the 2015 amendments placed proportionality at the "center stage," discovery about a producing party's efforts to preserve evidence or respond to requests—"discovery on discovery"—is disfavored but permitted in limited circumstances. *Black v. W. Va. State Police*, No. 3:22-cv-96, 3:22-cv-203, 2023 WL 4834948, at *9-10 (S.D.W. Va. July 27, 2023). Across the nation, courts express concern about such discovery continuing ad infinitum—and undermining the focus on proportionality—when permitted without close scrutiny, if at all. *See LKQ*, 345 F.R.D. at 161-62 (collecting authority). Nonetheless, courts may venture, carefully, down this path "'where a specific deficiency is shown in a party's production, or where a party's efforts to comply with proper discovery requests are reasonably drawn into question.'" *FS Med. Supplies, LLC v. TannerGAP, Inc.*, No. 21-501-RJC-WCM , 2024 WL 4896697, at *2 (W.D.N.C. Nov. 26, 2024) (quoting *Black*, 2023 WL 4834948, at *10); *see also LKQ*, 345 F.R.D. at 163 (requiring "specific and tangible evidence of a material failure of an

opponent's" discovery obligations before authorizing discovery on discovery); *Freedman v. Weatherford Int'l Ltd.*, No. 12-2121-LAK-JCF, 2014 WL 4547039, at *1-2 (S.D.N.Y. Sept. 12, 2014) (discovery on discovery requires an "adequate factual basis" demonstrating "specific reasons for believing that . . . production [was] deficient" (quoting *Freedman v. Weatherford Int'l Ltd.*, No. 12-2121, 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014) and then quoting *Orillaneda v. French Culinary Inst.*, No. 07-cv-3206, 2011 WL 4375365, at *6-7 (S.D.N.Y. Sept. 19, 2011))).

To Team Cam's credit, it identifies specific deficiencies in Midlantic's sparse first production based on the presence of responsive documents involving Midlantic that were produced by other defendants. Team Cam's Reply, at 6. And the fact that Midlantic supplemented that production with a much larger number of documents raises some question about its initial efforts and practices. Even so, the Court will not order the requested collateral discovery at this time. Midlantic's production occurred under too narrow a construction of Team Cam's RFPs. Now informed that it must supplement its responses based on the Court's construction, Midlantic has an opportunity to conduct a proper search of items in its possession, custody, and control and to comply with its discovery obligations. However, against the backdrop of the previous specified deficiency, sufficient evidence of future deficiencies may warrant some limited inquiry. *See Argopex Int'l, Inc. v. Access World (USA) LLC,* No. ADC-19-1232, 2021 WL 3090901, at *3 (D. Md. May 20, 2021) (ordering a defendant to describe its discovery process and certify its results when Plaintiff showed the court that Defendant should have produced certain documents based on its discovery from third parties); *Mayor & City Council of Baltimore v. Priceline.com, Inc.*, No. MJG-08-3319, 2010 WL 11552861, at *2 (D. Md. Feb. 5, 2010)

(ordering an explanation regarding paper document retention and preservation in light of demonstrated production failures).

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Compel (ECF 123) is GRANTED in (large) part.  Midlantic shall supplement its discovery responses consistent with the Court's construction set forth above.  However, Midlantic is not required, at this time, to provide information about its document retention and search practices.

Date: March 3, 2026

_____/s/_____
Charles D. Austin
United States Magistrate Judge